Regina S. ENNIS

v.

**NEW JERSEY BELL TELEPHONE COMPANY and Telephone Workers Union of New Jersey, Local 827 International Brotherhood of Electrical Workers, AFL–CIO.**

**Appeal of Regina ENNIS.**

**No. 84–5669.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Aug. 9, 1985.

Decided Aug. 12, 1985.

Beverly K. Thompson, Philadelphia, Pa., for appellant.

Francis X. Dee, John K. Bennett, Carpenter, Bennett & Morrissey, Newark, N.J., for appellee New Jersey Bell Telephone Co.

Before ALDISERT, Chief Judge, and STAPLETON and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Chief Judge.

The question before the court is whether the district court properly followed the teachings of *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir.1984), and its predecessors, in dismissing a complaint for the failure of the plaintiff and plaintiff's counsel to obey court orders compelling discovery. *Poulis* teaches:

> In exercising our appellate function to determine whether the trial court has abused its discretion in dismissing, or refusing to lift a default, we will be guided by the manner in which the trial court balanced the following factors, which have been enumerated in the earlier cases, and whether the record supports its findings: (1) the extent of the *party's* personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanc-*

*tions;* and (6) the *meritoriousness* of the claim or defense.

747 F.2d at 868.

We affirm the judgment of the district court for the reasons set forth by the district court in its exhaustive opinion, *reprinted in* app. at 747a–71a, and additionally for the reasons set forth from the bench. *Id.* at 736a–40a. We now turn to the *Poulis* factors listed above.

## I.

With regard to the first *Poulis* factor, we are satisfied that in the relationships between attorney and client, the plaintiff assumed a personal responsibility throughout these entire proceedings, and that the district court considered this factor. On two separate occasions the district court directly asked plaintiff's counsel, Beverly K. Thompson, whether she had made plaintiff aware of counsel's health problems and whether the plaintiff wanted Ms. Thompson to continue representing her. *Id.* at 592a–93a, 714a–15a. On both occasions, the court was informed that the plaintiff wanted Ms. Thompson and no one else to represent her, "despite her knowledge of counsel's troubles with compliance with court rules and orders." *Id.* Plaintiff's counsel said that the plaintiff had been advised of the wisdom of obtaining new counsel, and declined the invitation. *Id.*

## II.

The second *Poulis* factor concerns prejudice to the defaulting party's opponent caused by the delay. We are persuaded that there was prejudice to the defendant. In imposing previous sanctions against the plaintiff, the court stated:

> The defendant has a right at some point in time, when he comes again and again, as he is forced to do, before this Court for the enforcement of reciprocal discovery obligations and is constantly turned down on his request for sanctions. At some point I wouldn't blame them for throwing up their hands and saying what kind of hall of justice is this? We've been going on here now for three years or so, three and-a-half, and every time we come before this Court, the judge or the

magistrate winds up by saying, "Well, let's give her another chance, she's been sick or she's been ill, and there is this excuse or that excuse, that may be legitimate. And so rather than prejudice or penalize the litigant, we won't throw the case out."

*Id.* at 591a. Moreover, critical evidence was lost. Plaintiff's expert witness, Dr. King, misplaced the original tape recorded report that he had made in this case. *Id.* at 693a. Also, although the cause of action arose in 1979 there was a concomitant dimming of memories caused by the five year delay.

### III.

With regard to the third *Poulis* factor, the record is a paradigm of dilatory conduct on the part of plaintiff and plaintiff's counsel. Indeed, the record of dilatoriness is so all-pervasive that it need not be set forth in detail. It is sufficient to note the comments of the district court:

Ms. Thompson's comments and conduct evidenced an indifference to her obligations to the court and defense counsel. Although she relied upon her disabilities as an excuse and blamed defense counsel for her predicament, the inescapable conclusion is that she was, once again, at least in a position properly to apprise the court and defense counsel of the status of her progress in complying with the court's order and to seek relief if necessary, and that she utterly failed to take the appropriate action.

*Id.* at 767a–68a. These are findings of the district court which we believe are entirely consistent with the "history of dilatoriness" factor in *Poulis:*

Time limits imposed by the rules and the court serve an important purpose for the expeditious processing of litigation. If compliance is not feasible, a timely request for an extension should be made to the court. A history by counsel of ignoring these time limits is intolerable.

747 F.2d at 868.

### IV.

In finding plaintiff's counsel's conduct to be of sufficient culpability to warrant the dismissal, the fourth *Poulis* factor, the district court expressly stated that her conduct and comments demonstrated "total disregard," app. at 750a, and "indifference" of an "unconscionable" nature toward her obligations as counsel, her responsibilities to her adversary, and toward the court's orders. *Id.* at 763a, 767a. Moreover, the district court determined that "Ms. Thompson is fearless in her indifference to this court's order: she has never given the court any indication that she appreciates the gravity of her conduct." *Id.* at 769a. Although the court did not use the words willfulness or bad faith, these are not necessary. *Hritz v. Woma Corp.,* 732 F.2d 1178, 1182–83 (3d Cir.1984). We are persuaded that the district court's use of the words "total disregard" and "fearless ... indifference" met the condemned conduct standard of "willfulness" or "bad faith."

### V.

We next turn to the fifth *Poulis* factor, whether the district court considered the effectiveness of sanctions other than dismissal. Here, too, the court properly addressed this factor:

The court has already imposed many of the sanctions suggested by the Court of Appeals for the Third Circuit in *Titus v. Mercedes Benz of North America,* 695 F.2d 746, 749 n. 6 (1982). Ms. Thompson has been warned on numerous occasions and reprimanded on the record in open court. Costs and attorney's fees have been assessed against the plaintiff and against Ms. Thompson. Experts have been excluded, and the exclusion of any more testimony would be tantamount to a dismissal.

Sanctions not already imposed would be either pointless or inappropriate under the circumstances. It would obviously be ludicrous to place this case at the bottom of the court's calendar as a sanction. Both plaintiff and plaintiff's counsel apparently have great tolerance for

delay, but it is the delay suffered by the defendant and the court which is intolerable. To either fine or temporarily suspend Ms. Thompson from practice before this court would not serve the ends of justice; nor would conditionally dismissing the suit unless plaintiff secured new counsel. Ms. Thompson is fearless in her indifference to this court's orders: she has never given the court any indication that she appreciates the gravity of her conduct. The court, therefore, does not believe that a fine or temporary suspension would be effective. Furthermore, a temporary suspension would only serve to delay the already long overdue resolution of this matter and would therefore needlessly prejudice the defendant.

App. at 768a–69a.

## VI.

Finally, we turn to the sixth *Poulis* factor, the merits of plaintiff's claims. In evaluating this consideration, "we do not purport to use summary judgment standards." *Poulis*, 747 F.2d at 869. Although the district court did not explicitly record its consideration of this factor in its opinion, the court had previously entertained two hearings on motions by the defendant for summary judgment, and commented upon the meritoriousness of appellant's claim: "[I]f I were the defendant in this case, I would have brought this [summary judgment] motion. I think it's perfectly justified. I'm going to deny your motion, but I would have brought it. It's a very, very close case." App. at 172a. Commenting further, the court stated:

> While the record does not present a strong showing of discriminatory intent on the basis of race, this court cannot find that summary judgment is appropriate. For, given all favorable and reasonable inferences drawn in plaintiff's favor, there is something more than the bare fact of discharge.

*Id.* at 176a. The record therefore contains the district court's evaluation of the merits of plaintiff's case as marginal.

## VII.

In sum, we are satisfied that the record supports the conclusion that the district court properly considered all *Poulis* factors prior to dismissing the action with prejudice. Indeed, based on this record, the district court had no other alternative.

We have carefully considered all of the contentions of the appellant. The judgment of the district court will be affirmed in all respects.